IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-CR-00035 REB-JMC-1

UNITED STATES OF AMERICA,

Plaintiff,
v.

KARL KLOEPPEL.

Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**James M. Candelaria, United States Magistrate Judge**.

This matter is before this Court on Defendant's Motion To Suppress Statements docket #97 and Motion to Suppress Illegal Search of Vehicle docket #98. Pursuant to 28 U.S.C. §636(b)(1) and D.C. Colo.L.Civ.R. 72.1(C)(3), the above Motions have been referred to this Court for recommendation [docket # 103]. This Court has reviewed the relevant Motions, Government's Response, briefs by both parties, the entire case file, the applicable law and further held a suppression hearing whereby testimony was offered, exhibits admitted and argument given by both parties. Wherefore, this Court is sufficiently advised in the premises.

For the reasons that follow, the Court **RECOMMENDS** Defendant's Motion to Suppress Statements docket #98 be **DENIED IN PART and GRANTED IN PART** and Defendant's Motion to Suppress Illegal Search of Vehicle docket # 100 be **DENIED** in its entirety.

## I. Statements Made by Defendant on October 3, 2020

Defendant first seeks suppression of his statements to law enforcement made on October 3, 2020. Defendant bases his motion on the fact that he was not given *Miranda* warnings. Defendant further alleges his statements were obtained through coercive governmental conduct without identifying what conduct was coercive. Government's response is Defendant was never detained or placed in custody on October 3, 2020, and therefore, no *Miranda* warnings were required.

An individual is in custody when their "freedom of action is curtailed to a 'degree associated with formal arrest,'" *United States v. Perdue,* 8F.3d 1455, 1463 (10th Cir. 1993) (quoting *California v. Beheler,* 463 U.S. 1121, 1125 (1983) (per curium). The standard is viewed from the perspective of a reasonable person. *United States v. Chee,* 514 F.3d 1106, 1113 (10th Cir. 2008). On December 10, 2021, this court held a suppression hearing and received testimony from Monte Vista Police Officer Ezekial Sisneros. Officer Sisneros testified that he responded to a call unrelated to the Defendant. While responding to that call, Officer Sisneros saw Defendant in front of a residence and approached him. Officer Sisneros asked Defendant about an alleged shooting. Defendant responded with exculpatory statements. The encounter was out in the front yard of the residence. Officer Sisneros did not draw his weapon and did not physically restrain Defendant, nor did Officer Sisneros explicitly or implicitly indicate Defendant was not free to go or that Defendant had to answer his questions. The entire encounter was brief and ended with both parties going their separate ways. Defendant's counsel cross-examined Officer Sisneros and elicited no contradicting testimony. There is nothing in the record indicating coercive action by Officer Sisneros. Wherefore, this Court finds the encounter was consensual, Defendant's freedom of action was not curtailed to a degree associated with a formal

arrest under a reasonable person standard, and therefore, he was not in custody necessitating the advisement of *Miranda* rights. This Court recommends denial of Defendant's Motion to Suppress Statements made on October 3, 2020.

## II.     Statements Made by Defendant When Taken into Custody

The following is a summary based upon the Defendant and Government's briefs, admitted exhibits, and testimony provided under oath. On October 16, 2020, local and federal law enforcement prepared to execute a state search warrant on Defendant's residence and a related state arrest warrant for Defendant. Colorado State Patrol ("CSP") officers were on standby in case Defendant fled when officers attempted to execute the warrants. Around 12:45 p.m. two CSP Troopers saw a BMW driven by Defendant leave the area of his residence. The Defendant sped away at a high rate of speed and the troopers gave chase. The troopers activated their emergency lights and Defendant pulled over to the side of the road. Defendant was driving and Co-Defendant was in the front passenger seat of Defendant's vehicle. The troopers approached Defendant's vehicle with their firearms drawn and ordered Defendant and Co-Defendant out of the vehicle. The troopers placed Defendant and Co-Defendant in handcuffs and separated them from each other. Defendant was led in handcuffs to a trooper's vehicle. Co-defendant was searched by a different officer who found narcotics on Co-defendant. While being led to the trooper's vehicle, Defendant was making statements about the Co-defendant indicating Co-defendant had drugs and a weapon. All of this was captured on video camera located in the trooper's vehicle. Defendant is then helped into the trooper's vehicle where he continues to make statements and ask questions. In reviewing the video and the accompanying audio, none of the statements made by Defendant from the time he was led to the vehicle, stood next to the vehicle, and while Defendant was in the vehicle were the result of any questioning by officers.

3

The in-court testimony put on by the Government further supported the video evidence. Defendant did not put forth any evidence or solicit any testimony on cross-examination during the suppression hearing undermining what the video and testimony clearly demonstrated.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court delineated certain safeguards that must be afforded to criminal suspects when in custody. These safeguards include the right to remain silent and not answer questions by law enforcement, the right to consult with an attorney before speaking to law enforcement officials and to have an attorney present during a custodial interrogation. *Id.* at 469-473. Interrogation occurs when an officer "should have known that their words or actions-whether framed as a question or not-were reasonably likely to elicit an incriminating statement." *United States v. Cash*, 733 F.3d 1264, 1277 (10th Cir. 2013). The test is objective and focused on the perceptions of a reasonable person in the suspect's position. *Id.* However, statements made spontaneously by one in custody without interrogation do not offend the Fifth Amendment. *See United States v. Yepa,* 862 F.3d 1252, 1257 (10th Cir. 2017).

This Court finds that even though Defendant was in custody on October 16, 2020, from the time he was pulled over with weapons drawn to his arrival at the Monte Vista Police Department, his statements were unsolicited and not the product of an interrogation by law enforcement nor were Defendant's statements or questions the product of any actions by the officers. Therefore, this Court recommends denial of Defendant Motion to Suppress Statements made during his arrest and prior to his arrival at the Monte Vista Police Station.

### III.    Statements Made by Defendant at the Monte Vista Police Station

Defendant claims, in conclusory fashion and without pointing to anything specific, the interrogation that occurred on March 16, 2020, at the Monte Vista Police Station was conducted

without proper advisement and without a knowing and intelligent waiver of his rights pursuant to *Miranda*.

Prior to conducting a custodial interview, law enforcement is required to advise a suspect of four specific rights found in the Fifth Amendment:

> [A suspect] must be warned prior to any questioning [1] that he the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has a right to the presence of an attorney, and [4] if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires.

*Florida v. Powell*, 559 U.S. 50, 59-60 (2010) (citing *Miranda v. Arizona*, 384 U.S. 436.). Once advised of their *Miranda* rights, a suspect can invoke his rights and decline to speak with law enforcement, or he can waive them and provide statements. A waiver of these rights is valid if it is knowing, intelligent and voluntary. *United States v. Burson*, 531 F.3d 1254, 1256-57 (10th Cir. 2008). A waiver is knowing and intelligent when it is made "with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Colorado v. Spring*, 479 U.S. 564 (1987). The government must prove the validity of a waiver by a preponderance of the evidence. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986). An express written statement of waiver, such as the "advice of rights" form, is strong proof of the waiver's validity. *See North Carolina v. Butler*, 441 U.S. 369, 373, (1979). Determination of whether this standard has been met is by looking at the totality of the circumstances. *Burson*, 531 F.3d at 1256.

Defendant was taken into custody and brought to the Monte Vista Police Station on October 16, 2020, where he was taken to an interview room inside the station. The interview room had one door and one window opposite of the door and contained a table and chairs on each side of the table. Defendant sat on one side of the table facing the door and an ATF Special Agent sat on the other side of the table with his back to the door and he faced the Defendant. There was

5

another law enforcement officer who sat next to the Special Agent and who had a body video camera on and captured the entire interview. The video shows Defendant had been given a Mountain Dew and some water and he was not handcuffed.

Defendant began making unsolicited statements and asked questions without any prompting by the officers. The Special Agent then informs Defendant that he must be advised of his *Miranda* rights before the interview can begin. Defendant responds by saying "I know, I know my rights, I know my rights." The Special Agent tells Defendant I must read you your rights before we can talk. The Special Agent then reads from a pre-written advisement form and goes through each of the Defendant's *Miranda* warnings and asks Defendant to sign the form attesting he has been read his rights and understands the rights he is afforded. Defendant signed the form without asking any further questions about his rights. The written form signed by Defendant was entered into evidence without objection as Government's Exhibit 4. The Special Agent then asks Defendant if he is willing to speak with them and Defendant says yes.

There is nothing in the record and no evidence was presented at the suppression hearing indicating Defendant suffers from any form of diminished mental capacity, is easily influenced or that the Special Agent coerced Defendant into signing the waiver. Therefore, this Court finds that on October 16, 2020, at the custodial interview, Defendant was properly advised of his rights, he understood his rights, and knowingly, intelligently, and voluntarily waived his rights.[1]

### IV. Defendant's Motion to Suppress Raised the Issue of his Right to have Counsel Present during questioning.

At the Suppression Hearing, Defendant further claimed his statements made after receiving his *Miranda* rights should be suppressed because the custodial interview continued after Defendant requested to speak with counsel on multiple occasions. The Government objected

---

[1] Defendant in paragraph 14, p.6 of his Supplemental Brief [Doc.#123] filed after the Suppression Hearing admits he waived his *Miranda* rights.

contending Defendant had waived the issue of his right to counsel by not raising it in his Motion to Suppress and the pre-trial deadline for motions had already passed.

Defendant's Motion to Suppress [Doc. 97] paragraph 5, Defendant states he "seeks suppression of the statements based upon his Fifth Amendment right. Specifically, [Defendant] alleges that his interrogations were conducted without a valid advisement of his *Miranda* rights nor a valid waiver of those rights." The Government argued that nowhere in Defendant's Motion to Suppress does Defendant expressly seek suppression based on a violation of his Sixth Amendment right to counsel. Before this Court could rule on Government's objection, the Government requested an opportunity to provide a supplemental brief on the newly raised Sixth Amendment issue and this Court granted the Government's request, took Government's objection under advisement, and further ordered Defendant to supplement his brief to address the 6th Amendment issue.

In *Miranda v. Arizona*, the Court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney. *Id.* 384 U.S. at 479. *Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation. Therefore, although not expressly stated in Defendant's Motion to Suppress, this Court finds Defendant did raise the issue of whether his right to counsel was violated when he alleged in his original Suppression Motion alleging a lack of a valid waiver of his rights. The Government's objection that Defendant failed to raise the issue is overruled.

## V.  Defendant Invoked his Right to Counsel During the Custodial Interview

Defendant asserts that after initially waiving his rights, he thereafter invoked his right to counsel however counsel was not provided, and the interview continued. Defendant seeks suppression of all his statements made on October 16, 2020 under the fruit of the poisonous tree doctrine. The Government contends Defendant's statements regarding needing a lawyer were not unequivocal, but rather ambiguous and when combined with the Defendant's continuation of unsolicited statements and questions, do not raise to the level of an unequivocal request for counsel.

An accused's Fifth Amendment right to counsel attaches when he invokes that right during a custodial interrogation. *Miranda*, 384 U.S. at 444–45. Once an attorney is requested, all questioning must cease until counsel is provided unless the right to counsel is waived. *Id.* at 473–74. An accused can waive his previously invoked right to counsel if he initiates further communications with the law enforcement officials. *Edwards*, 451 U.S. at 484–85. However, the government must show that the defendant effectively waived his Fifth Amendment right to counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045–46 (1983). Occasionally "an accused's asserted request for counsel may be ambiguous or equivocal." *Smith v. Illinois*, 469 U.S. 91, 95, (1984). In *Davis v. United States*, 512 U.S. 452, 458-59 (1994), the Court refused to adopt a rule that would require police to cease questioning just because "a suspect makes a statement that might be a request for an attorney." *Id.* at 461.  There, the suspect stated "[m]aybe I should talk to a lawyer," and the Court found that such a remark was not an unambiguous request for counsel. *Id.* at 462. The inquiry for reviewing courts is whether the suspect has "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459.

The video (Exhibit 3) shows Defendant made his first mention of an attorney at the 1:02 minute mark. "If I'm going to jail . . . I'll just have my lawyer talk to you guys. ... But if you guys want me to help you, I'll help you." This Court finds that statement is ambiguous and conditional and not an unequivocal request for counsel. *See Davis* at 462. Defendant continues talking and the Special Agent shuts him down by telling Defendant he will not speak to him until he has been read his rights and agrees to waive those rights. Defendant was then read his rights and signed the pre-printed waiver form (Exhibit 4). Thereafter, the questioning continued.

At the 9:03 mark on the video timer, Defendant asks, "should I call my attorney before I get myself in trouble?" The Agent responds, "I want to know what you know." Defendant then continues to make statements and the interview continues. This Court finds Defendant's question "should I call my attorney?" is not an unambiguous request for counsel. *Id.* (*Davis* Court finding "should I call my attorney before I get myself into trouble?' an ambiguous request for counsel).

At the 13:14 mark on the video, Defendant states "I'm talking here without my lawyer." Again, this Court finds such statement is not a request for Counsel but rather posed rhetorically and does not rise to the level of an unequivocal request for counsel.

At the 18:21 mark on the video, Defendant begins making several references to wanting an attorney while he continues talking and making statements. At the 18 minute and 38 second mark of the video Defendant unequivocally states, "I want my attorney." Defendant continued to make statements and ask questions after making that statement until the 18 minute and 50 second mark when one of the officers responded to one of Defendant's questions saying, "I'm just asking". The custodial interview continued for another 22 minutes and 37 seconds without a

break, without counsel for the defendant and without either officer providing any further advisement of Defendant's rights.

Once a suspect has stated his desire for counsel, "a valid waiver of that right cannot be established by showing only that [the suspect] responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards*, 451 U.S. at 484.

This Court finds that Defendant's statement "I want my attorney" unequivocally invoked his right to have an attorney present at the 18 minute and 38 second mark of the custodial interview as depicted on the timer of the video in Exhibit 3. Thereafter Defendant continued to make unsolicited statements and ask questions until the 18 minute 50 second mark when the officer asked another question further initiating conversation without affording the Defendant his right to counsel. Therefore, I recommend suppression of all Defendant's statements made after the 18 minute and 50 second mark as depicted on the timer of the video (Exhibit 4) of the custodial interview on October 16, 2020. *See Wong v. United States*, 371 U.S. 471 (1963).

## VI. Motion To Suppress Illegal Warrantless Search of Vehicle

Defendant seeks suppression of all evidence seized from a search of his vehicle after he was arrested and taken into custody. Defendant contends the search was in violation of the Fourth Amendment Warrant requirement predicated on an invalid search incident to arrest and thereby necessitating suppression of all evidence obtained from the search. Government contends the automobile exception to the Fourth Amendment Warrant requirement applies and probable cause existed to search Defendant's vehicle.

On October 16, 2020, Monte Vista Police had a State search warrant for Defendant's residence and a State warrant for Defendant's arrest. Colorado State Troopers were asked to stand by and assist in case Defendant fled while the warrants were served. When Monte Vista

10

Police tried to serve the warrants, Defendant fled in his vehicle. The Troopers gave chase and pulled Defendant over. The Troopers approached Defendant's vehicle with firearms drawn and ordered Defendant and Co-Defendant out of Defendant's vehicle. Defendant was driving and Co-Defendant was in the passenger seat. Defendant was handcuffed and led away to a trooper's vehicle and away from Co-Defendant. While being led to the trooper vehicle, Defendant made statements that Co-Defendant had a weapon on him and further stated he had "stuff on him." When officers handcuffed Co-Defendant, they noticed a bulge in Co-Defendant's pocket. When questioned about the bulge, Co-Defendant admitted that he had drugs on his person. Officers conducted a pat down search and found a small bag of apparent heroin and a large bag of apparent methamphetamine down Co-Defendant's pants. Co-Defendant then told the officers there was a gun inside Defendant's vehicle.

The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.' United States v. Ross, 456 U.S. 798 (1982) (*quoting*) (*Katz v. United States*, 389 U.S. 347, 357 (1967). "[P]olice officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant." *Florida v. Meyers*, 466 U.S. 380, 381, (1984) (per curiam). Moreover, "[o]nce the officer[s'] suspicions rise to the level of probable cause, they are empowered to search the entire vehicle, including the trunk and all containers therein that might contain contraband." *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir.2008) (internal quotation marks omitted).

The Supreme Court has stated that "[a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible" because "[t]hey are commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (quotations omitted). In determining whether probable cause exists, an officer "may draw inferences based on his own experience." *Id.* at 700.

Here, Defendant was pulled over after fleeing his residence while officers were trying to serve a search warrant on Defendant's residence and an arrest warrant for the Defendant. Once pulled over and arrested, Defendant made statements to officers that Co-Defendant had a weapon and had stuff on him. Co-Defendant admitted he had drugs on his person and there was a firearm in defendant's vehicle. A pat down of Co-Defendant produced distributable amounts of heroin and methamphetamine.

Given the information offered by Defendant to the officers, the evidence of distributable amounts of controlled substances found on the Co-Defendant, and Co-Defendant's statement that a firearm was in Defendant's vehicle, this Court finds the officers had probable cause to believe there was further evidence of contraband contained within Defendant's vehicle, and therefore, the automobile exception to the Fourth Amendment Warrant requirement applies.[2]

### VII. Conclusion

As set forth above, this Court **RECOMMENDS** Defendant's Motion to Suppress Statements docket #98 be **DENIED IN PART and GRANTED IN PART** and Defendant's Motion to Suppress Illegal Warrantless Search of Vehicle docket # 100 be **DENIED** in its entirety.

---

[2] Because This Court finds the officers had probable cause to search Defendant's vehicle under the automobile exception to a Fourth Amendment Warrant requirement, this Court need not address Defendant's allegation that the vehicle search was in violation of the "search incident to arrest" exception to the Fourth Amendment Warrant Requirement.

Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a <u>de novo</u> determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).

DATED this 25th day of January, 2022.

BY THE COURT,

James M. Candelaria
U.S. Magistrate Judge